UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CARLOS A. VASQUEZ-ESTRADA,

        Plaintiff,

   v.

COLLECTO, INC.,

        Defendant.

Case No. 3:14-CV-01422-ST

**OPINION AND ORDER**

**STEWART, Magistrate Judge:**

## INTRODUCTION

Plaintiff, Carlos A. Vasquez-Estrada, filed this action on September 3, 2014, alleging claims against defendant, Collecto, Inc., for violating the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA") in its efforts to collect from plaintiff a $659.56 debt to AT&T Mobility ("AT&T"). The debt did not belong to plaintiff, but instead was incurred by a person named "Carlos Vazquez" using plaintiff's stolen birth date and social security number.

Plaintiff's claims stem from two separate collection attempts by defendant. Defendant began its first effort in 2011 under the account number 4634717. Plaintiff disputed the debt to

the Consumer Reporting Agencies ("CRAs"), Experian, Trans Union and Equifax, prompting two of the CRAs to send notice of plaintiff's dispute to defendant through an Automated Consumer Dispute Verification ("ACDV") ("2011 ACDV"). The collection temporarily ended after defendant placed a hold on the account and sent a fraud packet to plaintiff and after AT&T recalled the debt from defendant without providing a reason.

In late 2012, defendant began a second effort to collect the debt after its subsidiary, U.S. Asset Management, purchased plaintiff's debt from AT&T among a large portfolio and sent it to defendant for collection. Defendant assigned plaintiff's debt a new account number of 3978147. Plaintiff again disputed the debt, and defendant again received an ACDV ("2013 ACDV"), this time only from Experian, referencing the new account. Defendant responded to the 2013 ACDV without indicating that the debt was disputed and continued its collection effort.

Plaintiff alleges claims for: (1) negligent noncompliance with § 1681b(f) of the FCRA for improperly obtaining his credit report and with § 1681s-2(b) of the FCRA for failing to report the debt as disputed to the CRAs (First Claim); (2) willful noncompliance with the same FCRA sections (Second Claim); and (3) violations of various sections of the FDCPA, including 15 USC §§ 1692c –1692g, when attempting to collect the debt (Third Claim).

Defendant has filed a Motion for Summary Judgment (docket #35) against each of plaintiff's claims, and plaintiff has filed a Motion for Partial Summary Judgment (docket #37) on his: (1) First Claim for violation of § 1681s-2(b) of the FCRA based on defendant's failure to note that plaintiff's debt was disputed on the 2013 ACDV; and (2) Third Claim for violations of § 1692c(c) of the FDCPA based on defendant continuing to collect the debt even after plaintiff requested a cease and desist and § 1692c(a)(1) of the FDCPA based on defendant telephoning plaintiff before 8:00 am PST.

All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).  For the reasons stated below, plaintiff's motion is granted in part on the First Claim; otherwise, both motions are denied.

## STANDARDS

Summary judgment may be granted if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law."  FRCP 56(c).  The moving party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing FRCP 56(e).  The court does "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial."  *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir 1989), quoting *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 249–50, 252 (1986).  The substantive law governing a claim or defense determines whether a fact is material.  *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000) (citation omitted).  The court must view the inferences drawn from the facts "in the light most favorable to the non-moving party."  *Bravo v. City of Santa Maria*, 665 F3d 1076, 1083 (9th Cir 2011) (citations omitted).

///

///

///

///

## **DISCUSSION**

**I.    Causation**

Defendant seeks summary judgment on all claims either because it did not cause plaintiff's damages or because plaintiff's injuries have been fully compensated by others.

Defendant first argues that the damages plaintiff seeks to recover occurred before defendant became involved in the collection of his debt. Plaintiff testified that he could only remember his credit score falling in 2008 and 2010 before defendant began collecting his debt in 2011. *See* Plaintiff's Depo., pp. 32, 68 (plaintiff could not remember whether his credit score decreased during the period of October 2011 to mid-2012).[1] This is hardly evidence that plaintiff suffered no damages to his credit score as a result of defendant's continued effort to collect the debt. In any event, plaintiff seeks relief beyond the damages that flow from bad credit, including economic loss, damage to his reputation, emotional distress, and invasion of privacy. First Amended Complaint, ¶¶ 43, 47, 51. Thus, this argument is rejected.

Defendant also argues that plaintiff has been compensated for these same damages through his settlement with the CRAs in separate litigation. However, the settlement with the CRAs resolved only claims under the FCRA, not under the FDCPA, and for different conduct. Moreover, the settlement amount included attorney's fees and compensation for plaintiff's wife, who was a co-plaintiff in that action. Even if plaintiff sought duplicate damages, there is no express or implied right to an offset of amounts that plaintiff may have received in settlement from other FCRA defendants. *See Thomas v. Trans Union, LLC*, Case No. 00-CV-1150-JE, at *18 (D Or Jan. 29, 2003); *Irvin v. Mascott*, 94 F Supp2d 1052, 1058 (ND Cal 2000). Defendant

---

[1] The parties have submitted documents with various attachments. Citations to affidavits, declarations, and depositions are identified by the last name of the affiant, declarant, or deponent, and citations are to the paragraph(s) of the affidavit or declaration or to the page(s) of the deposition transcript.

has failed to produce evidence that defendant did not produce any of plaintiff's damages and cannot reduce plaintiff's damages based on a settlement with the CRAs as a matter of law.

## II.     FCRA (First and Second Claims)

### A.     § 1681s-2(b)

In response to a request by a CRA, a furnisher of information (such as defendant) must:

> (C)     report the results of the investigation to the consumer reporting agency;
> (D)     if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E)     if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting     agency only, as appropriate, based on the results of the reinvestigation   promptly–
>    (i)     modify that item of information;
>    (ii)    delete that item of information; or
>    (iii)   permanently block the reporting of that item of information.

15 USC § 1681s-2(b)(1).

Plaintiff claims that as a result of defendant's unreasonable procedures, his debt was inaccurately reported by the CRAs on his consumer reports. In particular, plaintiff alleges that defendant violated its duties under § 1681s-2(b) by failing to: (1) conduct a reasonable investigation upon receiving the 2011 ACDVs from all three CRAs and the 2013 ACDV from Experian (First Amended Complaint, ¶¶ 8, 13, 23); and (2) report the debt as disputed in response to the 2013 ACDV (*id*, ¶ 23). Defendant seeks summary judgment against the allegation that it failed to conduct reasonable investigations, and plaintiff seeks summary judgment on his allegation that defendant failed to report his debt as disputed.

///

      **1.**    **Defendant's Motion**

          **a.**    **Statute of Limitations (2011 ACDVs)**

The statute of limitations for violations of the FCRA is "2 years after the date of discovery [or constructive discovery] by the plaintiff of the violation that is the basis for liability." *Drew v. Equifax Info. Servs., LLC*, 690 F3d 1100, 1109 (9th Cir 2012), citing 15 USC § 1681p(1) and *Merck & Co., Inc. v. Reynolds*, 559 US 633 (2010). Defendant argues that the statute of limitations commenced no later than February 3, 2012, when plaintiff received a letter from Enhanced Recovery Company, LLC ("Enhanced Recovery"), another collection agency, attempting to collect the debt. First White Decl. (docket #36), Ex. E. Because plaintiff did not file this action until September 3, 2014, more than two years later, defendant contends that his claims based on the 2011 ACDVs for violation of § 1681s-2(b) is barred by the statute of limitations.

By the time plaintiff received the Enhanced Recovery letter, he knew that efforts were being made to collect on the debt which he had previously disputed with defendant and the CRAs. *Id*, Exs. F & D. However, "the ultimate burden is on the defendant to demonstrate that a reasonably diligent plaintiff would have *discovered* the facts constituting the violation. . . . [defendant] must demonstrate how a reasonably diligent plaintiff . . . would have discovered the violations." *Drew*, 690 F3d at 1110, citing *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F3d 1197, 1206 (9th Cir 2012). Defendant fails to explain how the letter from Enhanced Recovery would have led plaintiff to discover the facts constituting defendant's failure to conduct a reasonable investigation upon receipt of the 2011 ACDVs. Plaintiff's notice of continued collection of his disputed debt is simply not evidence of constructive discovery under *Drew*.

> [A § 1681s-2(b)] violation is tied to the reasonableness of an investigation rather than the accuracy of its results. . . . In short, "[a]n investigation is

> not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." Thus, *Gorman* imposes fault, not for an investigation that produces incorrect results, but for an unreasonable investigation.

*Id*, quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F3d 1147, 1162 (9th Cir 2009).

The Enhanced Recovery letter may have put plaintiff on notice that the dispute process had failed to yield the correct outcome, but not on notice why that process had failed or which party was to blame. The violation leading to continued collection of the debt could have been committed by the CRAs in possibly relaying incorrect information to defendant that it simply confirmed. Moreover, as plaintiff argues, the Enhanced Recovery letter just as likely indicated the investigation was ongoing or that defendant had suspended collection of the debt in response to plaintiff's dispute in accordance with its FCRA duties and that AT&T had assigned the debt to a new collection company. Using similar reasoning, the Ninth Circuit in *Drew* found that constructive discovery did not arise without knowledge as to how the ACDV process unfolded.

> Drew notes that he had no knowledge of what TransUnion relayed to FIA, or even if the credit agency passed on the relevant information. Even if the CRA had passed on the relevant information, Drew did not know what information was available to the bank for its investigation, and had no basis in June 2004 to judge whether the investigation was reasonable. In fact, the record falls short of showing even that Drew knew that FIA's investigation had concluded.

*Id* (internal quotation marks omitted).

Plaintiff claims that he was equally unaware of the details regarding the ACDV process between defendant and the CRAs on February 3, 2012. Second Plaintiff Decl. (docket #43), ¶¶ 3–4. As in *Drew*, defendant fails to meet its burden to conclusively show that plaintiff knew or should have known of deficiencies in its investigation based on another company's efforts to collect the same debt. Thus, defendant is not entitled to summary judgment that plaintiff's

7 – OPINION AND ORDER

claims under the FCRA based on defendant's failure to reasonably investigate the 2011 ACDVs are barred by the statute of limitations.

### b. Reasonable Investigation (2013 ACDV)

The 2013 ACDV from Experian requested defendant to "[p]rovide complete ID and verify account information." First White Decl., Ex. J. Defendant argues that this request only required it to review its account to verify the consumer's personal information and report any conflicts, which it did. *See Gorman*, 584 F3d at 1157–58. Defendant did review its "file," consisting of the data entered in its FACS system, as well as information provided by AT&T. Belmore Depo., p. 115. However, in response, defendant mistakenly reported back the wrong name (different than the name in its account information). *Id*, pp. 47, 117–18. It also confirmed that the address was in Oregon, although the AT&T documents in its file show a Kansas City address. First Aflatooni Decl. (docket # 39), Ex. D. A reasonable juror could find that defendant's failure to discover and report accurate account information from its file amounted to an unreasonable investigation. Likewise, it is a genuine issue of fact whether defendant's mistake in reporting plaintiff's name is a minor difference which can be excused. *See Gorman*, 584 F3d at 1158.

Furthermore, the 2013 ACDV advised defendant that "THIS ACCOUNT HAS BEEN DISPUTED BEFORE." Although defendant had information about plaintiff's prior disputes in its file from 2011, it failed to cross-reference that information or look at those papers in its 2011 file. Defendant rejects plaintiff's argument that it was required to investigate prior disputes because the 2013 ACDV did not specify that he claimed identity theft. Even though the 2013 ACDV did not specify the nature of the dispute, it still put defendant on notice of prior disputes which defendant had on file. "The pertinent question is thus whether the furnisher's procedures

were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Id* at 1157. Just as a notation of "fraudulent charges" required the furnisher in *Gorman* to contact its fraud department to determine whether a fraud claim had been submitted, the notion on the 2013 ACDV required defendant to investigate its files to determine if it had previously received a letter of dispute from plaintiff. *See id* at 1158. If defendant had done so, it would have discovered plaintiff's letters in 2011 stating that the debt was fraudulent and in 2012 requesting that collection cease. First White Decl., Ex. F (2011 letters); First Aflatooni Decl., Ex. I (2012 letter). *See Gorman*, 584 F3d at 1155 ("By its ordinary meaning, an 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties.").

Summary judgment is "generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the reasonable man standard is thought ordinarily to preclude summary judgment." *Id* at 1157 (internal quotation marks and citations omitted). Accordingly, defendant is not entitled to summary judgment against the First Claim for violation of § 1681s-2(b) for failure to perform a reasonable investigation in response to the 2013 ACDV.

### 2.     **Plaintiff's Motion**

Plaintiff seeks summary judgment on its allegation that defendant violated § 1681s-2(b) of the FCRA by failing to indicate that the debt was disputed in its response to the 2013 ACDV. In particular, plaintiff alleges that defendant failed to place the "XB" notation in the space provided for the "consumer compliance code" on the response returned to Experian on February 25, 2013. As a result, plaintiff's next Experian credit report issued on February 28, 2013, still reflected the debt as undisputed. First Aflatooni Decl., Ex. K. This omission was

9 – OPINION AND ORDER

allegedly an abdication of a furnisher's responsibility to investigate and verify the dispute to the CRA.

On December 12, 2012, defendant received plaintiff's letter disputing the debt. Belmore Depo., p. 105; First White Decl., Ex. B, p. 7. Catherine Belmore ("Belmore"), defendant's FRCP 30(b)(6) witness, admits that defendant has no procedure to include the "XB" on ACDV responses, but instead reports the debt as disputed through its FACS account system that automatically notifies all three CRAs of disputed accounts every Friday. Belmore Depo., pp. 52, 118–19, 121, 128. The account notes show that defendant set a disputed flag on plaintiff's account on December 12, 2012. First White Decl., Ex. B, p. 7. As to why the ACDV did not reflect defendant's notification of the dispute, Belmore explains that "there was a glitch in this case where this account in our system showed that we have reported it as disputed. However, the bureaus are not showing it reported as disputed," and defendant does not know how this mistake occurred. Belmore Depo., pp. 119–20. Belmore further explains that it received the 2013 ACDV on February 18, 2013, and that the CRAs may not have yet updated the credit report which "does take 60 to 90 days." *Id*, p. 121.

Defendant argues that an "XB "mark on the 2013 ACDV response would have been redundant because it had already notified Experian of the dispute through its FACS system. Nonetheless, plaintiff argues that defendant was required to additionally indicate the debt as disputed in response to the 2013 ACDV. "Congress clearly intended furnishers to review [ACDV] reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F3d 142, 148 (4th Cir 2008). Accordingly, plaintiff contends that a collection agency must

correct the omission of a consumer's dispute in an ACDV regardless of any other notice the agency has given to the CRAs.

When responding to an ACDV, a furnisher must correct a credit file that lacks the notation of a bona fide dispute to avoid misleading the CRA. *Gorman*, 584 F3d at 1162-63 (following *Saunders*). Neither of the collection agencies in *Saunders* and *Gorman* had otherwise notified the CRAs of the dispute, such as through automatic updates. Nonetheless, the duty under § 1681s-2(b) is not a general duty to report a dispute at any time and in any way, but to correct an inaccuracy when placed "upon notice of dispute" from a CRA. *Id* at 1154. Responding to the CRA without correcting an omission is "misleading in such a way and to such an extent that [it] can be expected to have an adverse effect." *Id*, citing *Saunders*, 546 F3d at 150.

Even though defendant had previously reported plaintiff's dispute to the CRAs, the 2013 ACDV did not contain the most current information, possibly because of the 60–90 day delay described by Belmore. Plaintiff's credit report would continue to show the debt as undisputed until Experian processed defendant's notification. Thus, responding to the 2013 ACDV without correcting the omission of the "XB" code was "incomplete or inaccurate" within the meaning of the FCRA, entitling plaintiff to summary judgment on his First Claim for negligent noncompliance.[2]

**B.    § 1681b(f)**

Plaintiff also alleges that defendant violated § 1681b(f) of the FCRA by obtaining his consumer report on August 21, 2012, "from Experian without a permissible purpose." First Amended Complaint, ¶¶ 16, 42. That statute provides as follows:

---

[2] Whether defendant's violation was willful under § 1681n, as alleged in the Second Claim, must be resolved at trial.

> A person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with [§ 1681e] by a prospective user of the report through a general or specific certification.

15 USC § 1681b(f).

### 1. Permissible Purpose

Defendant seeks summary judgment against this alleged violation because it obtained plaintiff's consumer report "for a purpose for which the consumer report is authorized to be furnished." *Id.* That purpose is found in subsection (a) of the same statute which allows a CRA to furnish a consumer report:

> (3) To a person which it has reason to believe –
>
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer . . .

15 USC § 1681b(a)(3)(A)

Defendant argues that collection of a debt is the "collection of an account" and, thus, a permissible purpose as a matter of law under § 1681b(a)(3)(A), citing *Pyle v. First Nat'l Collection Bureau*, No. 1:12-CV-00288-AWI, 2012 WL 5464357 (ED Cal Nov. 8, 2012). However, *Pyle* is modified by the case on which it relies that explains that even where the purpose is clearly to collect a debt, § 1681b(a)(3)(A) requires that collection effort relate to "a credit transaction involving the consumer." *See Hinkle v. CBE Grp.*, No. CV 311-091, 2012 WL 681468, at *3 (SD Ga Feb. 3, 2012), *report and recommendation adopted*, No. CV 311-091, 2012 WL 676267 (SD Ga Feb. 29, 2012) ("Thus, if a collection agency . . . is retained by a creditor to collect a debt owed by a consumer, then it typically has a permissible purpose for

obtaining a consumer report in conjunction with its collection activities, so long as it seeks to use information in connection with a transaction that the consumer initiated with the creditor.").

The Ninth Circuit also has held that debt collection is a permissible purpose for obtaining a credit report under § 1681b(a)(3)(A) "only in connection with a 'credit transaction' in which a consumer has participated directly and voluntarily." *Pintos v. Pac. Creditors Ass'n*, 605 F3d 665, 674 (9th Cir 2010). Plaintiff argues that a credit transaction resulting from fraud is never one "involving" the consumer who is the subject of the consumer report, citing *Andrews v. TRW, Inc.,* 225 F3d 1063, 1067 (9th Cir 2000), *rev'd on other grounds, TRW, Inc. v. Andrews,* 534 US 19 (2001). In *Andrews*, the Ninth Circuit concluded that plaintiff, the victim of identity theft, was not "involved" in the credit transaction initiated by the imposter posing as plaintiff. Even though plaintiff's social security number and birth date were used to incur the debt, plaintiff was not "drawn in as a participant" citing the ordinary definition of the word. *Id* at 1064–65.

Defendant argues that under the plain language of the statute, its purpose is permissible as long as it intended to collect a debt that it believed was valid and "involved" plaintiff. District court cases have read this same excuse into the statute. *See Crehin v. ARS Nat'l Servs.*, No. 8:13-CV-01497-SVW, 2014 WL 104073, at *2 (CD Cal Jan. 9, 2014) ("A good faith belief that a debt exists is thus sufficient to satisfy these provisions."); *Trikas v. Universal Card Servs. Corp.*, 351 F Supp2d 37, 42 (EDNY 2005) ("[T]he plain language of [15 USC § 1681b(a)(3)(A) ] . . . focuses on the *intent* of the party obtaining the consumer report."); *Korotki v. Attorney Servs. Corp.*, 931 F Supp 1269, 1276 (D Md 1996) ("[S]o long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA."). However, these opinions do not discuss or follow *Pintos* or *Andrews*.

13 – OPINION AND ORDER

Plaintiff interprets *Pintos* and *Andrews* to deem the collection of a victim's fraudulent debt as an impermissible purpose, regardless of the user's intent or good faith belief. However, neither *Pintos* nor *Andrews* addressed how a collection agency's good faith belief that the debt is valid relates to whether it has a permissible purpose under § 1681b(a)(3)(A). *Andrews* did address the issue of the CRA's "reasonable belief" that the user had a permissible purpose, but that standard applies only to the CRA. Likewise, the user's intent was not an issue in *Pintos* because the defendant collection agency was collecting plaintiff's personal debt.

Nonetheless, § 1681b(a)(3)(A) defines a permissible purpose in terms of "a person" who "intends to use the information" for a permissible purpose. As stated by another district court interpreting the same FCRA section, "the inclusion of the verb 'intends' is significant, because a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Trikas*, 351 F Supp2d at 42 (internal quotation marks and citation omitted). Under the usual tenets of statutory interpretation, the court must consider defendant's intent in this case.

Pursuant to its routine, defendant obtained plaintiff's consumer report to assess plaintiff's ability to pay what it believed was his debt. Belmore Depo., pp. 20–21, 38–40, 95–96. Defendant argues that plaintiff cannot produce evidence that defendant lacked that intent. Recently, a district court in this circuit interpreting *Pintos* and *Andrews* allowed a similar claim to survive a motion to dismiss based on plaintiff's allegation that the user of the consumer report, Citibank, "either knew or should have known" that plaintiff was the victim of identity theft and had not applied for the credit that it was trying to collect." *Rand v. Citibank, N.A.*, No. 14-CV-04772 NC, 2015 WL 510967, at *3 (ND Cal Feb. 6, 2015). Citibank argued that the intent requirement for the user is lower than the "reasonable belief" standard required for CRAs by

*Andrews*.  The court did not agonize over that distinction because it found that plaintiff's allegations met the higher standard.

Plaintiff has produced evidence that at the time defendant requested plaintiff's consumer report on August 21, 2012, it was on notice that the debt was fraudulent.  A reasonable juror could conclude that, based on the letters defendant received from plaintiff disputing the collections efforts in 2011, defendant knew or should have known that this account was the result of identity theft and that obtaining plaintiff's credit report was not authorized under the FCRA.  Accordingly, defendant is not entitled to summary judgment as to this violation.

### 2. **Certification**

Defendant also argues that plaintiff cannot produce evidence that defendant failed to certify its purpose as required by § 1681b(f).  Defendant does not keep records of specific or general certifications.  Third White Decl. (docket #52), Ex. A, p. 2.  Thus, plaintiff's requests for production of all documents related to certification during discovery yielded nothing other than one document containing only cursory information about the August 12, 2012 credit score request.  *Id*, Ex. B.  Because defendant has moved for summary judgment that it is not liable for violating § 1681b(f), it bears the burden of submitting facts proving that it complied with that statute.  Defendant argues that it has met its burden simply by pointing to the absence of facts essential to an element of plaintiff's claim.  *See Celotex Corp.*, 477 US at 323 ("[T]here can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").  However, certification is not an essential element of plaintiff's FCRA claim under § 1681b(f).  Plaintiff may prove a violation *either* with proof that defendant's purpose in obtaining plaintiff's consumer report was improper *or* with proof it failed to certify that purpose.  Even without

evidence of certification, plaintiff may succeed on this claim on the basis that defendant's purpose, whether certified or not, was impermissible. Thus, the lack of evidence regarding defendant's certification process does not defeat plaintiff's claim under § 1681b(f).

### III.   FDCPA (Third Claim)

The FDCPA is a strict liability statute that regulates the conduct of third-party debt collectors. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F3d 1162, 1175–76 (9th Cir 2006). As defined by the FDCPA, plaintiff is a consumer, defendant is a debt collector, and defendant was attempting to collect a debt. 15 USC § 1691a(3), (6), & (5). Although the Third Claim alleges that defendant failed to comply with the requirements of §§ 1692c–1692g of the FDCPA, plaintiff seeks summary judgment only on two of those requirements.

#### A.   § 1692c(c)

Plaintiff first moves for summary judgment on his claim that defendant violated § 1692c(c) of the FDCPA which prohibits a debt collector from continuing to communicate with a consumer who "notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer." On April 19, 2013, plaintiff mailed defendant a letter in which he both refused to pay the debt and told defendant to "not attempt to collect on it ever again." First Plaintiff's Decl., ¶ 12; First Aflatooni Decl., Ex. L. Defendant received that letter on April 23, 2013. Belmore Depo., pp. 135–37. Although defendant admits that it should have stopped collection of the debt, it continued its collection efforts through May 2014. Belmore Depo., pp. 140–41, 151–53, 158–59; First White Decl., Ex. B (account activity log).

To avoid liability, defendant relies on the bona fide error defense which exempts a debt collector who "shows by a preponderance of evidence that the violation was not intentional and

resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 USC § 1692k(c); *see McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F3d 939, 948 (9th Cir 2011). To qualify for the bona fide error defense, the defendant must prove that: (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation. *McCollough*, 637 F3d at 948.

Belmore explained that the representative made a "mistake" by failing to put the account in the "cease communication status" after receiving plaintiff's letter. Belmore Depo., pp. 142–44. With the right coding ("3600"), defendant would have made no collection attempts. Although the account already had been coded "3FRW" (a hold pending the receipt of the fraud packet) on April 8, 2013, that code was changed on April 24, 2013 to "3GPH," based on someone's review of the fraud packet and determination that there was "no fraud," causing collection to continue. *Id* at p. 147. Regardless of that change, the hold on collection should have continued if the account was properly coded based on plaintiff's letter.

Even if defendant mistakenly failed to code the "cease communication status," plaintiff argues that defendant had no procedures in place to avoid the error that occurred here and, therefore, cannot meet the third element of the bona fide defense.[3] According to Belmore, defendant has a clear policy of coding accounts as "3600" after the consumer "requests no more calls and letters." Belmore Decl., ¶ 5 & Ex. B, p. 10. Additionally, defendant safeguarded FDCPA compliance by providing "ongoing training" (Belmore Depo., pp. 14, 108), "[quality control] on some of the correspondence" (*id*, p. 108), and an Annual FDCPA exam certification.

---

[3] The parties also dispute whether defendant's violation was unintentional. Plaintiff characterizes the violation as the multiple acts of sending collection letters and telephoning plaintiff about the debt, which defendant knew was happening. Defendant, on the other hand, contends that the correspondence was the direct result of the mistaken coding, an unintentional act of the representative who read and processed plaintiff's letter. The parties may argue their different theories at trial.

17 – OPINION AND ORDER

Belmore Decl., ¶ 6 & Ex. C.  However, these procedures must be "reasonably adapted to avoid the specific error at issue," which means that the "procedures themselves must be explained, along with the manner in which they were adapted to avoid the error."  *Reichert v. Nat'l Credit Sys., Inc.*, 531 F3d 1002, 1007 (9th Cir 2008).  This requires a showing of a nexus between the procedures and the errors, such as redundancies or safeguards "to catch the stunning employee errors."  *See Webster v. ACB Receivables Mgmt., Inc.*, 15 F Supp3d 619, 629 (D Md 2014).

Defendant's policy of coding "3600" was obviously intended to ensure compliance with § 1692c(c).  However, for several reasons, a reasonable juror could also find that the policy was not reasonably adapted to guarantee that collection would stop if, as here, the account already was coded to halt communication for some reason other than the plaintiff's request.  Even Belmore does not know why that the representative failed to code the account "3600" in addition to "3FRW."  Belmore Depo., p. 143.  Also, Belmore does not explain how the policy applies when, as was the case here, collection was already suspended under the code "3FRW" pending the return of plaintiff's fraud packet.  Finally, there is no evidence as to what the ongoing training and quality control consists of or what the compliance exam requires.  Due to a genuine issue as to whether defendant's policies were reasonably adapted to avoid the mistake that caused collection to continue, plaintiff is not entitled to summary judgment on this claim.

**B.**     **§ 1692c(a)(1)**

Plaintiff also moves for summary judgment on his claim under § 1692c(a)(1) of the FDCPA based on defendant making three collection calls before 8:00 a.m. PST.  First Aflatooni Decl., Ex. B, p. 4 (January 14, February 21, and February 26, 2014).  The statute prohibits debt collectors from communicating with a consumer regarding a debt "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer" that is

presumed to include the period after 9:00 p.m. and before 8:00 a.m. 15 USC § 1692c(a)(1). Belmore testified that the absence of the letter "P" next to these call entries indicates that they occurred before noon in the "a.m." and did not know what the notation "GMT" indicated next to the time stamps. Belmore Depo., p. 160. However, Belmore later clarified in her declaration that defendant's call data entry policies require calls be recorded under "GMT," or Greenwich Mean Time. Belmore Decl., ¶ 4. In GMT time, all three calls were made between 8:00 p.m. and 9:00 p.m. PST, within the allowable time frame under § 1692c(a)(1). Based on this evidence, the undisputed facts do not support plaintiff's claim, precluding summary judgment.

## ORDER

Defendant's Motion for Summary Judgment (docket #35) is DENIED, and plaintiff's Motion for Partial Summary Judgment (docket #37) is GRANTED on his First Claim for violation of § 1681s-2(b) the FCRA based on defendant's failure to note that plaintiff's debt was disputed on the 2013 ACDV, and is otherwise DENIED.

DATED October 20, 2015.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge